RETAIL CLERKS INTERNATIONAL ASSOCIATION, LOCAL UNIONS NO. 128 AND 633, Plaintiffs,

v.

LION DRY GOODS, INC.
and
LaSalle's, a Division of R. H. Macy & Co., Defendants.

Civ. No. 8199.

United States District Court
N. D. Ohio, W. D.
Dec. 21, 1959.

Joseph E. Finley, Rudd, Ober, Finley & Miller, Cleveland, Ohio, for plaintiffs.

Merritt W. Green, Green & Kreutz, Toledo, Ohio, for defendants.

KLOEB, Chief Judge.

Plaintiffs filed this action in this Court pursuant to Section 301 of the Labor-Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C.A. § 185(a).

The amended complaint filed June 19, 1959 outlines two causes of action against the defendants, and prays in the first cause of action for an order of the Court requiring the defendants to permit non-employee representatives of plaintiffs to have access to areas of the stores of defendants, to wit, employees' cafeterias, which are not open to customers. In connection with the second cause of action, plaintiffs seek an order of the Court requiring the defendant LaSalle's to place two employees who were returned to work after the strike had ended on December 24, 1958, in their position classifications, and at the precise stations in the Men's Furnishings Department that they had occupied prior to the strike.

Attached to the amended complaint is Exhibit A, a letter from defendant La-Salle's to the chairman of the Toledo Labor-Management-Citizens' Committee, a Committee that had been engaged in mediating the differences between the respective parties and matters involved in the strike, which letter was accompanied with a "Statement of Understanding", with exhibits, all being offered to the Labor-Management-Citizens' Committee by the defendant LaSalle's.

There is also attached to the amended complaint Exhibit C, which is a letter from plaintiffs addressed to the Labor-Management-Citizens' Committee, in which they agree to the conditions and guarantees of the "Statement of Understanding".

There are also attached to the amended complaint Exhibits D, E and F, which are documents pertaining to defendant Lion Dry Goods, Inc., and which are comparable to the LaSalle exhibits heretofore referred to.

Under date of June 29, 1959, defendants filed their answer to the amended complaint, in which they set up three defenses, first, that the Court lacks jurisdiction over the subject matter, second, that the amended complaint fails to state a claim against either defendant upon which relief can be granted, and, third, that there is not in existence a contract between the plaintiffs and the defendants or either of them, as contemplated by or provided for in the Labor-Management Relations Act of 1947, and particularly Section 301(a) thereof.

On October 15, plaintiffs filed their brief and, on October 26, defendants filed an answer brief. On November 2, plaintiffs filed a reply brief.

On November 6, in connection with oral argument, the parties filed a stipulation, which reads in part as follows (pages 2 and 3):

"It is further stipulated by and between counsel for the parties that the plaintiff Unions and the defendants, individually, have not engaged in collective bargaining with respect

to wages, hours and other terms and conditions of employment pertaining to employees of either of the defendants or for the purpose of the negotiation of an agreement concerning wages, hours, or other terms of employment, or any questions arising thereunder, or negotiations for the execution of a written contract incorporating therein any agreement negotiated or reached between the parties; and it is further stipulated between counsel that none of the rates of pay, wage schedules, terms and conditions of the personnel policy and program, or other provisions or conditions contained in the entire plaintiffs' Exhibit B were negotiated as a result of bargaining or negotiations between either of the defendants and the Toledo Labor-Management-Citizens Committee acting for or on behalf of the plaintiff Unions; and it is further stipulated that all of the provisions contained in plaintiffs' entire Exhibit B, with the exception of Item No. 40 appearing at the last page of said exhibit, were in force and effect prior to December 24, 1958. Nothing in this paragraph is to preclude the Court from finding that the settlement of Dec. 24, 1958, was a collective bargaining agreement.

"It is further stipulated by and between counsel for the parties that the employee cafeterias in the downtown stores of the defendants and of the Lamson Brothers Company are located in areas in each of the stores not open to customers; and it is further stipulated between counsel that the Lasalle employees, McGinnis and Thal, were, prior to leaving their employment because of a strike on or about November 23, 1957, employed as salesladies in the Men's Furnishings Department in the highest wage classification provided in the wage schedules then in effect, and that upon their return to work at Lasalle's after December 24, 1958, each was employed as a saleslady in the Men's Furnishings Department in the highest wage classification provided in the wage schedules then in effect, and that the only difference in their work assignments upon their re-employment after December 24, 1958 was in the station to which each was assigned to work within the Men's Furnishings Department; the one formerly assigned to the station where men's shirts were sold was assigned to the station where men's sweaters were sold, with the other being assigned to stations in reverse of the ones just mentioned, that is, her later assignment being shirts as compared to her former assignment of sweaters."

It appears that, in November of 1957, plaintiffs, who at some prior time had been the recognized bargaining agents for the Retail Associates, Inc., comprised of four downtown department stores in Toledo, Ohio, and including the two defendants herein, called a strike against the four members of the Retail Associates, Inc. During the period of the strike, from November of 1957 to December 24, 1958, plaintiffs were not and do not claim to have been and are not now the recognized majority representatives of the employees of defendants. They do not claim to have such rights. They admit that they do not represent a majority of the employees of the defendants, but they say that they do represent some employees and that because of this representation they are entitled to petition for the enforcement of a contract under Section 301(a).

A few days prior to December 24, 1958, a plan was advanced by the chairman of the Toledo Labor-Management-Citizens' Committee whereby it was suggested that, if defendant LaSalle's would re-employ the strikers, plaintiffs would disclaim that they represented a majority of the employees of defendants. At that particular time LaSalle's was the only store where workers were out on strike.

Upon the presentation to the Labor-Management-Citizens' Committee of the exhibits heretofore referred to and that.

are attached to the amended complaint, picketing ceased and the strike was declared off. Employees of defendant La-Salle's were restored to work in due course in accordance with the Statement of Understanding.

It appears now that the defendants refuse to permit certain representatives of plaintiffs to enter the employees' cafeteria for the purpose of soliciting membership. This the plaintiffs complain of in their first cause of action in the amended complaint. Paragraph 6 of Exhibit B attached to the complaint reads in part as follows:

"* * * Nothing herein shall preclude an employee representative from entering areas of the store which are open to customers; or from communicating with employees, provided such communication is on the employee's non-working time and in no way interferes with the operating of the business."

Defendants claim that the employees' cafeteria is an area which is not open to customers and that, therefore, plaintiffs' agents are precluded from communicating with defendants' employees in these areas. Plaintiffs are of the opinion that they have a right to communicate with defendants' employees in these areas provided such communication is on the employees' non-working time and in no way interferes with the operation of the business of the defendants.

Plaintiffs' second cause of action is based on the ground that, while employees McGinnis and Thal, who up to December 24, 1958, were striking employees, and were re-employed as salesladies in the Men's Furnishings Department following their return to work, they were not again stationed at the exact counters theretofore occupied by them but that they were caused to exchange their positions at the shirt and sweater counters. There is no dispute but that the rate of pay was not reduced upon their return to work and that their earnings and earning opportunities are not changed.

The grounds relied upon in these two causes of action appear to be tenuous indeed and to be based on grievances that are not weighty in character. However, they do provide a "causus belli". Whether there is justification for taking the time of a Court because of these differences between the parties is open to grave question.

It is plaintiffs' position that the Statements of Understanding presented by defendants to the Labor-Management-Citizens' Committee and the subsequent concurrence in these statements by plaintiffs constitute a contract, at least a contract for the benefit of plaintiffs, and that it is, therefore, such a contract as is contemplated by Section 301(a) of the Act.

Section 301(a) of the Act, 29 U.S.C.A. § 185(a), reads as follows:

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

It is the contention of the defendants that, while Section 301(a) refers to contracts between an employer and a labor organization representing employees, this has reference to collective bargaining contracts, or agreements arrived at through collective bargaining, and could not have reference to the situation that obtains here.

From a study of the legislative background of the Act, and from certain decisions that we have examined, we are of the opinion that the strike settlement agreement that was concluded on December 24, 1958 is not such a contract as is contemplated by Section 301(a) of the Act, and that, therefore, we do not have jurisdiction over the subject matter.

The plaintiffs have cited and apparently rely upon the cases of Local 19, etc. v.

Buckeye Cotton Oil Company, 236 F.2d 776, and A. L. Kornman Company v. Amalgamated Clothing Workers of America, 264 F.2d 733, certiorari denied 80 S.Ct. 62.

These are cases that were decided by the Sixth Circuit Court of Appeals but, upon examination, we find that they both grow out of disagreements over existing collective bargaining agreements that were duly entered into by the parties under and in accordance with the provisions of the Act.

In the case at bar, the Statements of Understanding specifically point out that nothing contained therein is to be construed as giving recognition to the Union unless, at some future time within the discretion of the Union, the Union is certified as having been chosen by a majority of employees in a single store unit election conducted by the National Labor Relations Board. At no time have plaintiffs been so certified by the National Labor Relations Board. The Statements of Understanding further provide that the Union agrees that it will not request bargaining rights unless it proves its right to represent the employees, and that the employer will not recognize any Union except upon certification by the National Labor Relations Board.

We believe that the Act, in lodging authority in any District Court of the United States, contemplates such authority to be exercised where there has been a violation of a contract that had been entered into between an employer and a labor organization representing employees in an industry affecting commerce and that it thereby contemplates a collective bargaining agreement. The agreement that we are here considering is a strike settlement agreement which we cannot construe as having been entered into for the benefit of plaintiffs.

In the case of Schatte v. International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of United States and Canada, D.C., 84 F.Supp. 669, affirmed 9 Cir., 182 F.2d 158, certiorari denied 340 U.S. 827, 71 S.Ct. 64, 95 L.Ed. 608, we find the following (84 F.Supp. at page 672, par. 4):

"Whatever else may be said (and a great deal has been said in scores of pages of briefs and more than three full days of argument), any right of recovery under Section 301 must rest upon a *contract* and its asserted violation. *The whole Act relates to labor contracts, hence it must be a contract contemplated by the Act, i. e., a collective bargaining contract or contract relating to fair or unfair labor practices.* * * *" (Emphasis supplied)

On page 673, pars. 7 and 8, we find the following:

"The plaintiffs contend that in any event they are appropriately parties plaintiff under Rule 23, Federal Rules of Civil Procedure, 28 U.S.C.A., relating to class suits. Whether they do or could qualify under that rule is not necessary to determine as the provisions of Sec. 301 are inconsistent with Rule 23, Federal Rules of Civil Procedure, and must therefore prevail. *Sec. 301 is a special and limited grant of jurisdiction which must be strictly construed.* This is especially so in the light of the history of legislation dealing with labor relations and disputes such as the Clayton Act, 15 U.S.C.A. § 17, the Norris-La Guardia Act, 29 U.S.C.A. § 101 et seq., the Wagner Act, 29 U.S.C.A. § 151 et seq., and the Act under consideration." (Emphasis supplied.)

We are of the opinion that collective bargaining contracts between a Union and an employer were the only "contracts" intended to be actionable in a District Court of the United States under the provisions of Section 301(a), and that none of the factors which give substance to the rights of Unions to bring actions under Section 301 are present in this case, and particularly a contract between plaintiffs and defendants. We, therefore, conclude that the Court is without jurisdiction to entertain this

case, and the complaint is, therefore, dismissed.

Defendants may prepare and file findings of fact and conclusions of law drawn in accordance with this Memorandum Opinion within fifteen (15) days, and the plaintiffs may, within ten (10) days thereafter, file any suggested amendments or additions thereto.