320 F.2d 505
 Lester MORTON, d/b/a Lester Morton Trucking Company, Plaintiff-Appellee,
v.
LOCAL 20, TEAMSTERS, CHAUFFEURS, AND HELPERS UNION, an Affiliate of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendant-Appellant.
 No. 14984.
 United States Court of Appeals Sixth Circuit.
 July 25, 1963.
 
 1
 David Leo Uelmen, Milwaukee, Wis. (David Previant, Milwaukee, Wis., on the brief), for appellant.
 
 
 2
 M. J. Stauffer, Sandusky, Ohio (Flynn, Py & Kruse, Sandusky, Ohio, on the brief), for appellee.
 
 
 3
 Before O'SULLIVAN, Circuit Judge, and BOYD and THORNTON, District Judges.
 
 
 4
 THORNTON, District Judge.
 
 
 5
 Plaintiff filed this action in the district court seeking damages on account of a secondary boycott against it. The primary strike commenced August 17, 1956 and continued until October 5, 1956. Plaintiff claims that defendant's activities were unlawful within the purview of § 303 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 187, as well as being unlawful under the common law of the State of Ohio.
 
 
 6
 District Judge Kloeb, by his findings of fact and conclusions of law filed separately from his opinion, found that defendant had engaged in unlawful secondary activity that was violative of § 303 and also of the common law of Ohio. He awarded $19,619.62 compensatory damages plus $15,000.00 punitive damages.
 
 
 7
 The questions raised by appellant-defendant on this appeal have been resolved on one or more prior occasions by the Supreme Court of the United States or by this court. Defendant seeks to distinguish this case from those that have preceded it in the various particulars upon which it bases its argument for reversal.
 
 
 8
 I. JURISDICTION WHERE FEDERAL CLAIM JOINED WITH NONFEDERAL COMMON LAW TORT ACTION
 
 
 9
 Defendant contends that a federal court is without jurisdiction to entertain a suit for damages based on a secondary boycott unlawful under state law even though the suit also seeks damages under § 303 for an unlawful secondary boycott. This contention is directly contrary to the holding in the 1933 decision of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, as well as that in a number of recent cases decided by this court. Included among these are Flame Coal Company v. United Mine Workers of America, 303 F.2d 39 (6 Cir., 1962); White Oak Coal Company v. United Mine Workers of America, decided May 24, 1963, 318 F.2d 591 (6 Cir.); United Mine Workers of America v. Meadow Creek Coal Company, 263 F.2d 52 (6 Cir., 1959), certiorari denied, 359 U.S. 1013, 79 S.Ct. 1149, 3 L.Ed.2d 1038; and United Mine Workers of America v. Osborne Mining Co., 279 F.2d 716 (6 Cir., 1960), certiorari denied, 364 U.S. 881, 81 S.Ct. 169, 5 L.Ed.2d 103. Defendant contends that since there was no violence in the instant case a different rule applies. We are not aware of such a distinction and in fact are unable to appreciate any legal or logical reason for such a jurisdictional distinction. No decided case has been called to our attention in support of this contention by defendant. Another aspect of this argument advanced by defendant is that if the state court could not have entertained this suit for damages under state common law because of pre-emption by federal law there can be no recovery here. This contention is disposed of adversely to defendant by the holdings in the five cases above cited. The holdings in these cases permit joining federal and nonfederal grounds in support of a cause of action. A nonfederal cause of action is not extinguished because a state court is pre-empted by federal law from providing relief. We do not here decide that a state court is preempted from entertaining such a suit and awarding damages. We make the observation that the Supreme Court on December 10, 1962 handed down a decision holding that a § 301 action was not subject to the pre-emption doctrine under Garmon.[1] Smith v. Evening News, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246. It may be that the same considerations apply to a § 303 cause of action. See Local 100 of the United Association of Journeymen & Apprentices v. Borden, 1963, 373 U.S. 690, 83 S.Ct. 1423, 10 L. Ed.2d 638, footnote 3, of which reads as follows:
 
 
 10
 "49 Stat. 452, as amended, 29 U. S.C. §§ 157, 158. We do not deal here with suits brought in state courts under §§ 301 or 303 of the Labor Management Relations Act, 61 Stat. 156, 158, 29 U.S.C. §§ 185, 187, which are governed by federal law and to which different principles are applicable. See, e. g., Smith v. Evening News Assn., 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246."
 
 
 11
 Is it not implicit in the above that state courts are not subject to the pre-emption doctrine insofar as both § 301 and § 303 are concerned?
 
 II. DENIAL OF MOTION TO AMEND ANSWER
 
 12
 Prior to the trial date in the district court defendant asked for leave to file a motion to dismiss the amended complaint. Such leave was granted. The basis for the motion was set forth in defendant's memorandum in support thereof, namely, that a state court order dismissing plaintiff's action for the common law secondary boycott damages was res judicata and that such subject matter therefore could not be included in the instant suit in federal district court. The order of the state court reads as follows:
 
 
 13
 "It is Ordered that this matter be, and the same hereby is, dismissed otherwise than upon the merits, without the consent of the plaintiff, without prejudice to a new action based upon the same subject matter,* and for the reason that the Court does not have jurisdiction of the subject matter under the decision of the United States Supreme Court in San Diego Building Trades Council v. Garmon, 49 ALC 485. Exceptions saved to the plaintiff and defendant's costs taxed to the plaintiff."
 
 
 14
 It is clear that the reason for its issuance was the doctrine of pre-emption. The state court's citation of San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) was obviously for the purpose of indicating the authority upon which it relied in holding that state court jurisdiction was absent, not for the purpose of determining that jurisdiction was present in some other forum, a determination that may be made initially only by each forum for itself. It happens that the court in San Diego was concerned with the primary jurisdiction of the National Labor Relations Board to adjudicate the status of a disputed activity. The court there said that "(W)hen an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted. It also said: "Nor is it significant that California asserted its power to give damages rather than to enjoin what the Board may restrain though it could not compensate." San Diego Bldg. Trades Council v. Garmon, supra, 359 U.S. 245-246, 79 S.Ct. 779-780, 3 L.Ed.2d 775. The Board has no power therefore to award compensation. Neither has the state court such power in an area of federal pre-emption. However, Congress has provided a forum by virtue of 29 U.S.C.A. § 187 and this is completely independent of any National Labor Relations Board proceeding.[2] International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., 342 U.S. 237, 72 S.Ct. 235, 96 L.Ed. 275 (1952). The trial court denied this motion to dismiss. When the trial of this case began defendant again sought to present its res judicata contention by moving to amend its answer to add res judicata as an affirmative defense. This motion was denied by the trial court and such denial is here raised by defendant as constituting prejudicial error. We cannot agree. The granting or refusal of leave to amend is within the trial court's sound discretion. Chesapeake & Ohio Railway Company v. Newman, 243 F.2d 804, 813 (6 Cir., 1957). We do not here find an abuse of such discretion. In view of the nature of this amendment and in the light of what we have said above in regard to the law applicable to the res judicata contention of defendant, such defense is without merit. Its exclusion did not constitute prejudicial error.
 
 III. PROOF OF SECONDARY BOYCOTT
 
 15
 The findings of fact of the district judge as to secondary boycott activities violative of § 303 and of the state common law are amply supported by the evidence and are not clearly erroneous. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218. It would serve no useful purpose to here review the particular activities.
 
 IV. DAMAGES
 
 16
 That compensatory and punitive damages are recoverable for unlawful secondary boycott activities cannot be disputed. Gilchrist v. United Mine Workers of America, 290 F.2d 36 (6 Cir., 1961), certiorari denied, 368 U.S. 875, 82 S.Ct. 120, 7 L.Ed.2d 76; Flame Coal Company v. United Mine Workers of America, 303 F.2d 39 (6 Cir., 1962). That such damages are not capable of precise ascertainment does not preclude their allowance. United Mine Workers of America v. Osborne Mining Co., 279 F.2d 716 (6 Cir., 1960), certiorari denied, 364 U.S. 881, 81 S.Ct. 169, 5 L.Ed.2d 103; Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931). The basis upon which the lower court awarded compensatory damages in the amount of $19,619.62 was a reasonable and justifiable one. There was evidence to support the award and the trial court's findings are not clearly erroneous. Commissioner v. Duberstein, supra. As to the punitive damage award of $15,000.00, we cannot say that there was an abuse of discretion. The fact that the activities here engaged in did not involve violence does not entitle defendants to absolution from punitive damages. Had there been violence it may well be that punitive damages in a much greater amount would be justifiable.
 
 
 17
 For the foregoing reasons the judgment below is affirmed.
 
 
 
 Notes:
 
 
 [1]
 San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L. Ed.2d 775 (1959)
 
 
 *
 Italics supplied
 
 
 [2]
 One of the contentions advanced by appellant here is that the Board had exclusive jurisdiction of the subject matter of this controversy