RETAIL CLERKS INTERNATIONAL ASSOCIATION, LOCAL UNIONS NOS. 128 AND 633, Plaintiffs-Appellees,

v.

LION DRY GOODS, INC., and LaSalle's, a Division of R. H. Macy & Co., Defendants-Appellants.

No. 15378.

United States Court of Appeals Sixth Circuit.

Feb. 23, 1965.

Edwards, Circuit Judge, dissented.

Merritt W. Green, Toledo, Ohio (Green & Green, Toledo, Ohio, on the brief), for appellants.

Melvin S. Schwarzwald, Cleveland, Ohio (Joseph E. Finley, Metzenbaum, Gaines, Schwartz, Krupansky, Finley & Stern, Cleveland, Ohio, on the brief), for appellees.

Before WEICK, Chief Judge, and MILLER and EDWARDS, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

The plaintiffs, Retail Clerks International Association, Local Unions Nos. 128 and 633, filed this action in the District Court to enjoin the defendants, Lion Dry Goods, Inc., and LaSalle's from violating their agreements of December 24, 1958, with the plaintiffs, by refusing to accept and honor an arbitration award made by a panel of arbitrators pursuant to the terms of said agreement.

The material facts are not in dispute. The defendants are engaged in operating retail department stores in Toledo, Ohio. The plaintiffs are labor organizations representing employees in industries affecting commerce for the purpose of collective bargaining, but were not on December 24, 1958, or subsequent thereto, the recognized majority representatives of the employees of the defendants or either of them. This action was brought pursuant to Sections 301(a) and (b) of Title 29, United States Code, Labor Management Relations Act of 1947.

Plaintiffs were parties to collective bargaining contracts with defendants for many years prior to 1957. In November 1957 negotiations for renewal contracts were unsuccessful. Plaintiffs thereupon went on strike against defendant LaSalle's, which continued until December 24, 1958. The plaintiffs did not go on strike against the defendant Lion Dry Goods, Inc., but continued their dispute with that defendant until December 24, 1958. A few days before December 24, 1958, the Toledo Labor-Management-Citizens Committee, a local mediation and arbitration body (hereinafter referred to as the Committee), proposed a plan for settling the dispute. Discussions ensued between the Committee and the plaintiffs and between the Committee and the defendants, but at no time were direct negotiations carried on between the plaintiffs and the defendants. Each side made known to the Committee the conditions under which it was willing to terminate the dispute and the Committee discussed these conditions with the other side. In this manner a basis for settlement was reached, which was known as a "Statement of Understanding," which was satisfactory to all parties. Each store sent to the Committee its "Statement of Understanding," calling it the basis on

which the existing dispute between the locals and the defendants was to be fully and finally resolved. A few days later the locals wrote the Committee "we herewith agree to the conditions and guarantees of the Statement of Understanding." The conditions to be performed by each side were performed and the dispute was terminated.

The Statements contained the unions' acknowledgment that they were not then entitled to recognition as exclusive representatives and would not seek such recognition unless and until certified as so entitled in single store unit elections conducted by the National Labor Relations Board. The stores' agreement continued in effect detailed wage and hour schedules and provisions as to working conditions and other benefits, incorporated as exhibits to the Statement. Although the Statements were not identical in all respects they both contained the following provisions, which give rise to the present controversy. We quote the following from LaSalle's Statement of Understanding.

"6. * * * Nothing herein shall preclude an employee representative from entering areas of the store which are open to customers; or from communicating with employees, provided such communication is on the employee's non-working time and in no way interferes with the operating of the business.

"7. Any individual employee who may have a grievance involving an interpretation or application of or arising under the terms of this understanding with L-M-C, and who has presented such grievance to his supervisor and the Personnel Department without reaching a satisfactory solution, may take his case to the chairman of the L-M-C who in turn shall refer the case to a panel of the L-M-C, whose majority decision and order shall be final and binding. The panel shall render its decision and order within fifteen days after the grievance has been submitted to it. The procedure reg-ulating the hearing of the grievance by the L-M-C panel shall be determined by the panel."

Paragraph 1 of LaSalle's Statement of Understanding also provided that the striking employees would be reinstated without discrimination because of strike activities and without loss of seniority. Paragraph 2 provided that employees who made the required application for reinstatement would be returned to work "in their former position classifications if vacant or in positions comparable in duties and earning opportunities."

A few months later the following disputes arose. (1) The unions claimed the right of access to the employees' cafeterias in order to communicate with employees during their nonworking time. The defendants refused to allow union organizers this right of access, claiming that Paragraph 6 of the Statement of Understanding gave no right of access to the employees' cafeterias because they were not "areas of the store which are open to customers." It was stipulated between the parties for the purposes of this litigation that the employee cafeterias in the downtown stores of the defendants were located in areas not open to customers. The unions complained to the Committee, charging undue harassment of union organizers and a breach of the defendants' contract obligation; (2) two LaSalle's employees, who were salesladies in the Men's Furnishings Department, were fully reinstated after the strike to sales positions in the Men's Furnishings Department with the exception that the saleslady formerly assigned to sell men's shirts was assigned to sell men's sweaters, and the other saleslady, who was formerly assigned to sell sweaters was assigned to sell shirts. It was stipulated by the parties that the two salesladies were, prior to leaving their employment because of the strike on or about November 23, 1957, employed as salesladies in the Men's Furnishings Department in the highest wage classification provided in the wage schedules then in effect, and that upon their return to work at LaSalle's after December 24,

1958, each was employed as a saleslady in the Men's Furnishings Department in the highest wage classification provided in the wage schedules then in effect. The failure of LaSalle's to assign these employees to their former selling stations brought a complaint from the union to the Committee.

Proceeding under the provisions of Paragraph 7 of LaSalle's Statement of Understanding, the Committee referred these complaints to a panel which held a hearing on March 5, 1959, and handed down its decision on March 12, 1959. Awards went to the unions on both complaints, holding that the unions' right to contact employees applied to employee cafeterias as well as the public cafeterias, and that both the clerks at LaSalle's should be restored to their identical positions which they had before the strike. The stores refused to honor and accept these awards, following which this action was filed to require the stores to comply with the awards.

This is the second time this case has been before this Court. A review of its history is as follows. An amended complaint was filed on June 19, 1959. The defendants filed an answer on June 29, 1959, asserting as their first defense that the Court lacked jurisdiction over the subject matter. In other defenses they denied that there was in existence any contract between the plaintiffs, or either of them, and the defendants, or either of them, or that assurances given by the defendants to the Committee were for the benefit of the plaintiffs-unions. The answer also asserted that there was not in existence any contract between the plaintiffs and the defendants, or either of them, as contemplated by and provided for in the Labor Management Relations Act of 1947, and denied the right or authority of the Committee to arbitrate any grievance which the plaintiffs might claim to have. The case was submitted to the Court on the pleadings, a stipulation, briefs and oral argument.

The District Judge made findings of fact that the plaintiffs were not the recognized majority representatives of the employees of the defendants or either of them, that the Statement of Understanding given by each of the defendants to the Committee was a strike settlement statement, that it was not a collective bargaining contract negotiated by or on behalf of the plaintiffs with either of the defendants, and that there was no existing working contract between the plaintiffs and either of the defendants. He ruled as a matter of law that each Statement of Understanding was not a contract as contemplated by Section 301(a) of the Labor Management Relations Act of 1947 and that the Court was without jurisdiction of the subject matter of the action. The complaint was accordingly dismissed. The opinion of the District Judge is reported at Retail Clerks International Association, Local Unions No. 128 and 633 v. Lion Dry Goods, Inc., and LaSalle's, D.C., 179 F.Supp. 564.

On appeal to the Court of Appeals this Court affirmed the judgment of the District Court. This ruling, in the form of an order, is reported at 286 F.2d 235.

The Supreme Court granted certiorari and on February 26, 1962, reversed the judgment of the District Court. The opinion of the Court is reported at Retail Clerks International Association, Local Unions, etc. v. Lion Dry Goods, Inc., et al., 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503. Reference is made to the opinions of the District Court and the Supreme Court for a more detailed statement of the facts. In reversing the judgment of the District Court and of the Court of Appeals the Supreme Court did not pass upon the merits of the controversy or construe Paragraphs 6 and 7 of the LaSalle's Statement of Understanding. Its ruling was restricted to the question whether the Statement of Understanding was a contract as contemplated by Section 301(a) of the Labor Management Relations Act of 1947. It held that the Statement of Understanding was such a contract and that the District Judge had jurisdiction of the action. The cause was remanded to the District Court for further proceedings consistent with its opinion.

Following remand, the plaintiffs moved for summary judgment on May 3, 1962. On May 11, 1962, the defendants filed a memorandum in response to the motion for summary judgment suggesting to the Court that the plaintiffs' motion was premature. The memorandum stated that the Clerk of the District Court had from time to time informed the defendants that the case would not take its place on the active list until a mandate was received from the Court of Appeals; that upon receipt of such mandate the District Court would reinstate the case to the active list by an order, a copy of which would be received by counsel for the parties; and that under such procedure the case had not been returned to the Court's docket and the motion for summary judgment was premature. The memorandum also stated that if this was a misunderstanding as to the status of the case and the case had been reinstated on the docket, counsel for defendants requested permission to tender a motion to file an amended answer.

On May 24, 1962, the defendants moved for an order permitting them to amend their answer, pointing out that following the original decision of the District Court the Supreme Court had decided the trilogy of cases involving the United Steelworkers, reported at 363 U.S., pages 564, 574, and 593, 80 S.Ct., pages 1343, 1347, 1358, which made an amendment of the answer imperative in order for the defense to present issues which had become germane and proper by reason of said decisions. A proposed answer was tendered at the same time.

On September 25, 1962, the plaintiffs' motion for summary judgment was sustained. On September 26, 1962, the defendants' motion for an order permitting them to amend their answer was overruled. Defendants' request for reconsideration, filed on September 28, 1962, was denied on November 27, 1962. Judgment was entered on February 19, 1963, directing the defendants to comply with the arbitration awards of the Committee of March 12, 1959. This appeal followed.

Defendants contend that, although the Statement of Understanding given by each of them was a "contract" within the provisions of Section 301(a), Title 29, United States Code, with resulting jurisdiction in the District Court, as decided by the Supreme Court, the Committee was not empowered or authorized under the terms of the Statement of Understanding to conduct an arbitration of the two questions herein involved; that the two arbitration awards were incorrect and invalid; and that the District Judge erred in refusing to permit them to file their amended answers and in sustaining plaintiffs' motion for summary judgment in the face of the existence of disputed questions of fact and without the opportunity for the defendants to be heard.

The plaintiffs contend that the controversies between the parties were grievances within the provisions of the Statement of Understanding; that the two awards made by the panel of arbitrators were final and binding under the provisions of Paragraph 7 of the LaSalle's Statement of Understanding and were not subject to review by the District Court or by this Court; and that there was no error on the part of the District Judge in sustaining the motion for summary judgment some four months and three weeks after it was filed, during which time the defendants failed to oppose it, although they were given an opportunity to do so under Rule 56(c), Rules of Civil Procedure.

Arbitration is a matter of contract and a party can not be required to submit to arbitration any dispute which he has not agreed so to submit. Whether or not a party to a contract is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court, not by the arbitrator, on the basis of the contract entered into by the parties. United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409; Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462; John Wiley & Sons, Inc. v. Livingston, etc.,

376 U.S. 543, 546–547, 84 S.Ct. 909, 11 L.Ed.2d 898; Jefferson City Cabinet Co. v. International Union, etc., 313 F.2d 231, 232–233, C.A. 6th, cert. denied, 373 U.S. 936, 83 S.Ct. 1539, 10 L.Ed.2d 690.

If the Court finds as a matter of law that there is no valid contract between the parties providing for arbitration of disputes between the parties or, although such a contract may exist, it does not by its terms provide that the particular dispute involved is an arbitrable one, neither party can be required to submit the dispute to arbitration. Atkinson v. Sinclair Refining Co., supra, 370 U.S. 238, 241, 243, 82 S.Ct. 1318; Jefferson City Cabinet Co. v. International Union, etc., supra, 313 F.2d 231, 233, C.A. 6th, cert. denied, 373 U.S. 936, 83 S.Ct. 1539; Local Union No. 998, etc. v. B. & T. Metals Co., 315 F.2d 432, C.A. 6th; Timken Roller Bearing Co. v. N. L. R. B , 325 F.2d 746, 752–753, C.A. 6th, cert. denied, 376 U.S. 971, 84 S.Ct. 1135, 12 L.Ed.2d 85; Palnau v. Detroit Edison Co., 301 F.2d 702, 704, C.A. 6th; Local Union No. 787, etc. v. Collins Radio Co., 317 F.2d 214, 219–220, C.A. 5th; Procter & Gamble Independent Union, etc. v. Procter & Gamble Mfg. Co., 312 F.2d 181, C.A. 2nd, cert. denied, 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053; Local Union No. 12405, etc. v. Martin Marietta Corp., 328 F.2d 945, C.A. 7th.

If, however, the Court finds as a matter of law that a valid contract providing for arbitration of certain disputes exists and that the particular dispute involved is covered by the contract, arbitration will be decreed. In such a case whether procedural requirements under the contract have been complied with or have been excused by reason of the particular circumstances existing, is a question for the decision of the arbitrator. John Wiley & Sons, Inc. v. Livingston, etc., supra, 376 U.S. 543, 555–559, 84 S.Ct. 909; Local 748, etc. v. Jefferson City Cabinet Co., 314 F.2d 192, 194–196, C.A. 6th, cert. denied, 377 U.S. 904, 84 S.Ct. 1162, 12 L.Ed.2d 175. Usually, collective bargaining contracts calling for arbitration provide that the decision of the arbitrator shall be final and binding. Paragraph 7 of LaSalle's Statement of Understanding so provided.

There is no real dispute between the parties about these legal principles. The difference between them is in the application of the principles to the particular facts of this case.

We agree with the appellees' contention that if the right to arbitration exists, which we will discuss later, the rulings or awards of the arbitrators are final and not subject to review by the Court. This contention is fully supported by the authorities. United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 568, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers v. Warrior & Gulf Nav. Co., supra, 363 U.S. 574, 80 S.Ct. 1347; Jefferson City Cabinet Co. v. International Union, etc., supra, 313 F.2d 231, C.A. 6th, cert. denied, 373 U.S. 936, 83 S.Ct. 1539.

Our real problem is in determining whether the two disputes are matters which are arbitrable under the provisions of the Statements of Understanding. We recognize that the Supreme Court has stated in the recent United Steelworkers cases that the use of arbitration for the final disposition of labor-management disputes is favored as a national policy. At the same time, however, the Supreme Court has made it very clear in the cases hereinabove referred to that arbitration is a matter of contract and a party can not be required to submit to arbitration any dispute which he has not agreed so to submit. The recognition of this right was just recently restated in John Wiley & Sons, Inc. v. Livingston, etc., supra, 376 U.S. 543, 546–547, 84 S.Ct. 909. With respect to this aspect of arbitration, it is purely a matter of contract, not a question of policy. A national policy favoring arbitration does not authorize arbitration unless the contract so provides. Atkinson v. Sinclair Refining Co., supra, 370 U.S. 238, 241, 82 S.Ct. 1318.

We are of the opinion that the claim of the unions was not one subject

to arbitration. Paragraph 7 of the Statement of Understanding, which deals with arbitration, gives the right of arbitration to "any *individual employee* who may have a grievance." (Emphasis added.) The individual employee may prosecute his grievance and take his case to the committee for arbitration. The unions, not the employees, are the ones who sought arbitration. They are not given that right under the contract. Atkinson v. Sinclair Refining Co., supra, 370 U.S. 238, 241, 243, 82 S.Ct. 1318; Local Union No. 998, etc. v. B. & T. Metals Co., supra, 315 F.2d 432, 437, C.A. 6th; Timken Roller Bearing Co. v. N. L. R. B., supra, 325 F.2d 746, 753, C.A. 6th, cert. denied, 376 U.S. 971, 84 S.Ct. 1135; International Union, etc. v. Benton Harbor Malleable Industries, 242 F.2d 536, 541–542, C.A. 6th, cert. denied, 355 U.S. 814, 78 S.Ct. 15, 2 L.Ed.2d 31. See: Vulcan-Cincinnati, Inc. v. United Steelworkers of America, etc., 289 F.2d 103, 107–108, C.A. 6th.

The argument is made that the contention of appellants that the grievances herein involved were not arbitrable ones under the Statement of Understanding comes too late, in that the parties treated the issues as arbitrable and the appellants participated in arbitration without raising the question until after the adverse ruling of the arbitrators. We do not think that this argument is applicable under the present status of this case.

The record with respect to this is not as satisfactory as it could be. The amended complaint alleges that a panel of the Committee held a hearing on March 5, 1959, and transmitted its decision to the parties on March 12, 1959. The parties stipulated that counsel for the appellants appeared on behalf of the appellants at this meeting, which the parties in attendance "assumed" to be a meeting of a panel chosen by the Committee to perform proper functions delegated to it under the provisions of the Statement of Understanding. But neither the amended complaint nor the stipulation set out the proceedings of the meeting or advise us whether the appellants did or did not raise the question of the panel's jurisdiction in addition to the arguments on the merits.

In the letter of March 23, 1959, from appellant's counsel to the Chairman of the Committee, which appears to be in the nature of a petition for reconsideration, counsel refers to the question of the jurisdiction of the panel as well as to the merits of the decision. In the original answer of the appellants, filed on June 29, 1959, ten days after the filing of the amended complaint, the appellants deny that any recognition was given to any decision of the Committee by way of a request for reconsideration of a decision of a panel of the Committee with regard to any rights claimed by the plaintiffs.

In the proposed amended answer, which the appellants tendered for filing, the appellants deny that they gave any assurances to the plaintiffs or to the Committee authorizing the Committee to act in the role of arbitrator "to any extent, or in any manner on grievances filed by the plaintiff unions." This proposed answer also denies that a panel authorized by and drawn from the Committee ever heard any dispute as alleged in the amended complaint and expressly alleges that the Committee is forbidden by its charter to serve as an arbitration agency, "a fact unknown to the defendants on December 24, 1958, March 5, 1959, March 12, 1959, April 7, 1959, or any other time pertinent to this action, and not discovered by the defendants until after the filing of the amended complaint herein." The tendered answer in a separate paragraph also expressly denies that the panel which acted in the premises was authorized by the appellants "to act in any way, to any extent, or in any manner whatsoever."

In the order overruling appellant's motion to file the amended answer, the only reason given for doing so is "good cause therefore appearing." In the order granting the plaintiffs' motion for summary judgment, the reasons given for doing so are given as the judgment of the United States Supreme Court re-

manding the cause to the District Court, that there is no genuine issue of fact to be submitted to the trial court and the court's conclusion that the plaintiffs were entitled to judgment as a matter of law without, however, discussing the legal issues involved.

■ Accordingly, we do not construe the ruling of the District Judge as being based upon the theory that the appellants by their conduct conferred authority upon the panel to consider and pass upon the issues involved. There is no finding of fact to that effect. We are not permitted to make such a finding on this review. The position taken by the appellants at the meeting of the arbitrators and other statements bearing on the issue possibly made by them are not before us. Under the pleadings, including the proposed amended answer, it appears that these facts could be very much in dispute. It may be that this case may eventually be decided upon that ground, but the judgment can not be affirmed at the present time based upon such a reason.

■ With respect to the grievances of the two salesladies at LaSalle's, we are of the opinion that they were arbitrable grievances. The salesladies were employees of LaSalle's who were given the right of arbitration under the Statement. Although the union did not have the right to arbitrate this issue, and the amended complaint is very indefinite about whether the two employees or the union processed these grievances and presented them for arbitration, it does allege that the plaintiffs were representatives of the two employees in the proceeding, which allegation is accepted in the absence of a denial thereof.

■ With respect to the procedural aspects of the case, we are of the opinion that the District Judge was in error in overruling defendants' motion to amend their answer. Rule 15(a), Rules of Civil Procedure, provides for the filing of an amended pleading and states that "leave shall be freely given when justice so requires." The amended answer denied the authority of the selected panel to act as an arbitrator, which raised a new issue in the case, the determination of which involved factual questions not before the Court. Some of the facts alleged in the amended answer were very material to the issue and were not known by the appellants at the time of the arbitration or at the time the original answer was filed. The brief order sustaining the motion for summary judgment does not refer to this new issue, which apparently was not considered by the Court. We see no prejudice to the plaintiff in permitting the amended answer to be filed. Cooper v. American Employers' Insurance Co., 296 F.2d 303, 306–307, C.A. 6th. Clearly, there was no urgency in proceeding with the case. The amended answer was tendered on May 24, 1962. The motion to file it was not overruled until September 26, 1962. The Supreme Court said in Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222, 230, "Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." The Court also said in the opinion in that case that it is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of mere technicalities. See also: Cooper v. American Employers' Insurance Co., supra, 296 F. 2d 303, 306, C.A. 6th; Lone Star Motor Import Inc., v. Citroen Cars Corp., 288 F.2d 69, 75, C.A. 5th. The defendants should have been permitted to file the amended answer. McHenry v. Ford Motor Co., 269 F.2d 18, 24, C.A. 6th; Breier v. Northern California Bowling Proprietors' Association, 316 F.2d 787, 789–790, C.A. 9th. The fact that it was tendered after remand to the District Court for further proceedings does not change the rule. City of Texarkana, Texas, v. Arkansas Louisiana Gas Co., 306 U.S. 188, 203, 59 S.Ct. 448, 83 L.Ed.

598. Where an amended pleading has been tendered and permission to file it should be given, an adversary motion for summary judgment should not be granted before it is filed and considered. Castner v. First National Bank of Anchorage, 278 F.2d 376, 384, C.A. 9th; Rossiter v. Vogel, 134 F.2d 908, 912, C.A. 2nd. See also: Kane v. Chrysler Corp., 80 F. Supp. 360, 366, D.C.Del.

If the District Judge had permitted the amended answer to be filed, as we think he should, there would have been injected into the case the defenses asserted by appellants that the Committee was forbidden by its charter to act as an arbitrator and, in any event, the panel was not legally constituted. Under such circumstances the case was not one for summary judgment. Sartor v. Arkansas Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967, rehearing denied, 322 U.S. 767, 64 S.Ct. 941, 88 L.Ed. 1593; S. J. Groves & Sons Co. v. Ohio Turnpike Commission, 315 F.2d 235, 237–238, C.A. 6th, cert. denied, 375 U.S. 824, 84 S.Ct. 65, 11 L.Ed.2d 57.

The judgment is reversed and remanded for further proceedings consistent with the views expressed herein.

EDWARDS, Circuit Judge (dissenting).

The encouragement of the use of arbitration as a device for quick and final disposition of labor-management disputes has been adopted as national policy, both by the United States Supreme Court and the Congress of the United States. United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Enterprise Wheel & Car. Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L. Ed.2d 1424 (1960); United Steelworkers v. Warrior & Gulf Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); 9 U.S.C. §§ 3 and 4.

With all respect to my colleagues, I suggest that the disposition of this controversy arrived at in the District Court's judgment is proper implementation of that policy.

The agreement which the United States Supreme Court found to be a contract as contemplated by Sec. 301(a) of the Labor Management Relations Act of 1947, Retail Clerks v. Lion Dry Goods, 369 U.S. 17, 25, 26, 82 S.Ct. 541, 7 L.Ed. 2d 503 (1962), was entered into December 24, 1958. It provided for "final and binding arbitration" where a grievance arose "involving an interpretation or application of or arising under the terms of this understanding."

The parties in the current dispute were the parties involved in the contract referred to. Several months after the contract two grievances were submitted for arbitration under the contract, the parties proceeded to arbitration and a disposition was handed down by a panel appointed to arbitrate.

Defendants refused to accept these awards and that refusal led to litigation which started at the District Court level, 179 F.Supp. 564 (N.D.Ohio 1959), traveled to this court on appeal, 286 F.2d 235 (C.A. 6, 1960), and to the United States Supreme Court, 369 U.S. 17, 82 S.Ct. 541 (1962), where the case was reversed and remanded to the District Court.

The District Judge then entered summary judgment on the pleadings and an agreed statement of facts, in accordance with what he thought to be the import and intent of the United States Supreme Court's opinion. Another appeal being taken to this court, it is proposed that we again remand the matter—this time for trial at the District Court level.

I believe that, although this contract was no work of art, the intentions of the parties were reasonably effectively expressed therein, and that properly read it called for final and binding arbitration of all grievances "involving an interpretation or application of or arising under the terms of this understanding."

Where the contract calls for binding arbitration, the function of the court is limited to determining whether or not the party seeking arbitration is making a claim which, on its face, is governed by

the contract. United Steelworkers v. American Manufacturing Co., supra, 363 U.S. at 568, 80 S.Ct. 1343.

I read the District Judge's decision as a finding that the parties were bound by the contract to arbitrate and that the issues presented for arbitration were arbitrable. I believe that as a matter of contract interpretation the District Judge was right in so holding.

Further, it is of great significance that both of the parties themselves treated the issues as arbitrable; that they both submitted the issues to arbitration; that they both participated in arbitration, and that the appellant first decided the issues were not arbitrable after appellant had lost before the arbitrator and then lost before the United States Supreme Court.

In this regard we note the following paragraph in the stipulation of facts upon which this case was originally submitted:

"It is further stipulated by and between counsel for the respective parties that Merritt W. Green, counsel for the defendants, appeared on behalf of the defendants at a meeting held on March 5, 1959 in the Catholic Charities Building, Toledo, Lucas County, Ohio, which said meeting was presided over by Monsignor Michael Doyle and assumed by all parties in attendance to be a meeting of a panel chosen by the Toledo Labor-Management-Citizens Committee to perform proper functions delegated to such a panel under the provisions of Section 7 of plaintiffs' Exhibit B at page 2, and Section 4 of plaintiffs' Exhibit E at page 2, both of which exhibits are set forth in the amended complaint. (Statements of Understanding delivered to Monsignor Doyle by Lasalle's and The Lion Store respectively.)"

We also note Monsignor Doyle's letter to appellants' attorney when he sought reconsideration of the arbitration panel's decisions in this same matter:

"Dear Mr. Green:

"This acknowledges your letter of March 23, 1959 protesting the decision of the panel with respect to procedure of union organizers in contacting store employees for the purpose of soliciting union membership.

"The agreement of December 24, 1958, provides among other things, that all panel decisions are 'final and binding.' The decision of the panel in this case was reached after a proper hearing and as panel decisions are final and binding, the panel sees no reason to re-open the matter."

Under the facts presented here if defendant-appellants had an objection to arbitration of either of the issues, it seems clear to me that their course of conduct waived it.

In United Steelworkers v. American Manufacturing Co., supra, the Supreme Court said:

"Section 203(d) of the Labor Management Relations Act, 1947, 61 Stat. 154, 29 U.S.C. § 173(d), states, 'Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. * * *' That policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." United Steelworkers v. American Manufacturing Co., supra, 363 U.S. at 566, 80 S.Ct. at 1345–1346.

I believe the District Judge on remand properly enforced the arbitration awards rendered under the contract on the pleadings and stipulated facts as they stood before him.

I also believe that the District Judge acted well within his discretion at that late hour of this litigation in refusing

defendants' proffered amended answer. Over and above defendants' delay in presenting the proposed amendment, I profoundly doubt that the amended pleading tendered raised any factual issue which, if resolved in defendants' favor, would serve to change the result.

Further, Rule 15(a) of the Federal Rules of Civil Procedure provides for amendment of pleadings (after expiration of the normal 20 days' time for such amendment) "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." This has universally been interpreted to mean that the trial court is vested with a sound discretion in granting or denying amendment and that his decision will not lightly be overturned. See Bowles v. Biberman Bros., 152 F.2d 700 (C.A. 3, 1946); Chesapeake & Ohio Railway Co. v. Newmann, 243 F.2d 804 (C.A. 6, 1957); Morton v. Local 20, Teamsters, Chauffeurs, and Helpers Union, 320 F.2d 505, (C.A. 6, 1963), modified on other grounds, 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964); 1A Barron & Holtzoff Federal Practice and Procedure § 445, p. 722, and cases cited.

I do not believe that, on this record, justice requires a finding that the District Judge abused his discretion.